## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Derek Davis, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      Your Affiant is a Special Agent with Homeland Security Investigations (HSI) assigned to the office of the Resident Agent in Charge, Minot, North Dakota.  Your Affiant has been employed by HSI since January of 2006. Your Affiant has a Bachelor of Science degree in Criminal Justice from the University of North Dakota Grand Forks, North Dakota, and has successfully completed the Criminal Investigator Training Program and HSI Special Agent Training and the U.S. Customs Inspector Training all located at the Federal Law Enforcement Training Center in Glynco, Georgia.  Prior to his employment with HSI, your Affiant was a U.S. Customs Inspector within the U.S. Customs Service, Department of Treasury for three plus years.  Your affiant previously worked as a Special Agent assigned to a DEA Task Force in Minneapolis, Minnesota.  As a Special Agent, your Affiant is responsible for enforcing federal criminal statutes and has received training and actual experience relating to Federal Criminal Procedures, Federal Statutes, and HSI Regulations.  The information contained within the affidavit is based on your Affiant's training and experience, and information obtained from other law enforcement agents involved with this investigation, MHA Nation Division of Drug Enforcement (MHADDE), Special Agent Chad Coulter, and MHA Nation Division of Drug Enforcement, Special Agent Tyler Fauver, MHA Nation Division of Drug Enforcement (MHADDE), Special Agent Dawn White, MHA Nation Division of Drug Enforcement, Patrol Officer David Brummett, MHA Nation Division of Drug Enforcement, Patrol Officer Tobias Two Crow, Bronson Young Wolf with MHA Highway Patrol, and K9 Patrol Officer Darren

Carter with the New Town Police Department.

2.      As a Special Agent, your Affiant is responsible for enforcing federal criminal statutes to include the importation, sale, distribution and possession of controlled substances, Pursuant to Title 21, United States Code (USC). Additionally, your affiant is responsible for enforcing federal criminal statutes to include the operation of unlicensed money service businesses, and money laundering; Pursuant to Title 18, United States Code (USC).  Your Affiant has received training and actual experience relating to Federal Criminal Procedures, Federal Statutes, and HSI Regulations. Additionally, your Affiant has received training and instruction in international and interstate narcotics investigations, along with international and interstate financial investigations. The information contained within the affidavit is based on your Affiant's training and experience, and information obtained from other law enforcement officers and agents involved with this investigation.

3.      As a Special Agent with HSI, I have authority to investigate violations of federal law.  I also have authority to seek and execute federal process, to include criminal complaints and search warrants.  I make this affidavit in support of an application for three search warrants under Federal Rules of Criminal Procedure to search the following: (1) a residence (hereinafter "the SUBJECT RESIDENCE") described to be white/grey in color trailer house, with a yellow placard containing a picture of an animal attached to front of residence, and known to be occupied by Patricia Lincoln and Cory Johnson, located at or about 301 1st Street NW, Sanish Townsite, New Town, ND (as further depicted in Exhibit A the residence search warrant) for the items identified in Exhibit B; (2) a white Nissan Altima bearing Maryland license plate number 2CS7606, (hereinafter "the SUBJECT VEHICLE") known to be rented and driven by Jorge Pitts, and registered to EAN Holdings LLC, Enterprise Rent-A-Car Co., currently located at the A&W

2

Towing Impound Lot, located at 8850 41st St NW, New Town, ND; and, (3) Two cellular telephones seized from Jorge Pitts on January 25, 2018, namely, one Black iPhone cellular telephone,and one Black LG flip phone cellular telephone (hereinafter described as "the SUBJECT CELLULAR TELEPHONES"), currently located at the New Town Police Department evidence vault, 103 Soo Place, New Town, North Dakota.  All three search warrants request authority to search and seize items related to violations of Federal law relating to drug trafficking conduct, namely, 21 U.S.C. § 841(a)(1) (drug distribution), 21 U.S.C. § 846 (conspiracy), and 18 U.S.C. § 2 (aiding and abetting).

4.     Based on the facts set forth in this affidavit, I believe that the SUBJECT RESIDENCE; as well as SUBJECT VEHICLE; and the SUBJECT CELLULAR TELEPHONES are all presently being used in furtherance of violations of Title 21, United States Code, Sections 841(a)(1) and 846 (distribution of controlled substances, and conspiracy) and that there is probable cause to believe that the execution of said search warrant will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

5.     Because this affidavit is being submitted for the limited purposes of supporting a search warrant, your affiant has not included each and every fact known concerning this investigation.  It would be nearly impossible to include all known factual information in this affidavit.  Instead, your affiant has provided a general overview of the investigation and has set forth only the specific facts necessary to establish probable cause to support the issuance of a search warrant for the SUBJECT RESIDENCE, SUBJECT VEHICLE and the SUBJECT CELLULAR PHONES.  The following paragraphs contain evidence to support probable cause

3

regarding the involvement in the distribution of controlled substances from the SUBECT RESIDENCE, SUBJECT VEHICLE, and SUBJECT CELLULAR PHONES. Where statements of others are set forth in this affidavit, they are set forth in substance and are not verbatim. The information contained in this affidavit is based on your affiants own personal knowledge, information gained through training and experience, in addition to information made and obtained by other law enforcement agents, witnesses and documents. References made to confidential sources of information are referred to as "CS" throughout this affidavit. These are persons who are identifiable and whom have spoken with federal and tribal agents over the course of this and other investigations.

**PROBABLE CAUSE**

6.     Your Affiant is aware that Josh and Callie Lee have been interviewed by agents from the MHADDE on several occasions in the past. Each of them has admitted to having used and/or distributed prescription pills containing oxycodone over the past several years. On November 1, 2017, Josh and Callie Lee were charged in United States District Court with drug trafficking crimes related to the distribution of pills containing oxycodone. Neither was charged as stated at the time of the interview referenced here in this paragraph. However, each was made aware that they were subject to Federal prosecution. On September 07, 2017, SA Fauver with the Mandan, Hidatsa and Arikara- Division of Drug Enforcement (MHA-DDE) conducted an interview with Josh ("Josh") and Callie ("Callie") Lee together at the MHA-DDE Office in Parshall, North Dakota. SA Fauver spoke with Josh and Callie regarding their involvement and other individual(s)' involvement in the distribution of controlled substances, namely prescription pills. The Lees began to identify individuals who they knew to be distributing pills containing

4

oxycodone or other controlled substances.  Among other things, Callie stated that Patricia

Lincoln ("Patricia") and Cory Johnson ("Cory") resided in a trailer in the Sanish town site. SA

Fauver provided Callie with a map of the Sahnish town site to point out this trailer and Callie

identified "SUBJECT RESIDENCE" as the residence occupied by Patricia and Cory.  Josh stated

that an individual named Colby Whitaker has stayed at "SUBJECT RESIDENCE" in the past for

the purpose of distributing prescription pills.

7.      On September 28, 2017, SA Fauver observed a white-in-color rental vehicle

leaving the Sanish town site.  SA Fauver was aware through interviews with various drug users

and distributors, and through information supplied by other drug agents, that individuals

involved in the distribution of illegal narcotics frequently travel in rental vehicles for the purpose

of transporting narcotics and or large amounts of currency to and from different locations.  SA

Fauver along with other MHA-DDE agents continued to observe this same vehicle travel in the

New Town area.  This vehicle traveled throughout the New Town area for a significant period of

time and SA Fauver observed this vehicle then stop and park at "SUBJECT RESIDENCE" in the

Sanish town site.

8.      This vehicle remained at "SUBJECT RESIDENCE" for a short period of time

before traveling back to the New Town area.  This vehicle continued to travel in a suspicious

pattern around New Town, and SA Coulter with MHA-DDE conducted a traffic stop on the

vehicle for a traffic violation.  The operator of the vehicle was identified as Jorge Mikel Pitts

("Pitts").  Pitts is a African American  male from the Detroit, Michigan, area and provided a

driver's license from the State of Michigan.

5

9.      SA Fauver contacted K9 Officer Darren Carter with the New Town Police Department to come to the location of the traffic stop as Pitts is not an enrolled member of a federally recognized Indian tribe.  Officer Carter deployed his narcotics detection K9 on the vehicle, and his K9 alerted to the odor of illegal narcotics coming from in or about the vehicle. A search of the vehicle was done and located in the vehicle was a large water bottle that appeared to be full of urine.  No illegal narcotics were located in the vehicle.  When agents spoke with Pitts, Pitts denied ever stopping at the "SUBJECT RESIDENCE" and claimed he was lost and in route to Wyoming.  Based upon multiple investigations into similar activity, your Affiant is aware that individuals who have been involved in the distribution/transportation of prescription pills on/to the Fort Berthold Reservation have continuously been African American subjects from the Detroit, Michigan, area whom have frequently traveled in rental vehicles.  Pitts was released from the scene of the traffic stop with a warning for the traffic violation.

10.      On October 05, 2017, SA Fauver conducted another interview with Josh Lee ("Josh"). SA Fauver spoke with Josh regarding the distribution of prescription pills in the New Town area. Josh stated that a few days prior to this interview he spoke with Charles Franchuck ("Franchuck").  Josh stated that Franchuck advised him, that he (Franchuck) had observed approximately 65 vehicles come and go from the "SUBJECT RESIDENCE" in one day.  When shown a photograph of Jorge Pitts by SA Fauver, Josh stated that he believes he had observed this individual (Pitts) traveling in a white vehicle in the Sahnish area.  As referenced above, Pitts had recently been stopped by MHA-DDE agents in a white rental vehicle leaving the Sanish area.

6

11.    On November 10, 2017, Officer New Holy with MHA Highway Patrol arrived on the scene of a traffic stop conducted by North Dakota Highway Patrol Trooper Langer on Highway 23 a few miles west of New Town.  The operator of the vehicle was identified as Patricia Lincoln ("Patricia") and the front passenger was Cory Johnson ("Cory") and there was also a child in a car seat in the vehicle.  Officer New Holy could smell an odor of burnt marijuana coming from Patricia's person and the vehicle.  Patricia stated that she smoked marijuana approximately one (1) hour prior to the traffic stop at her residence "SUBJECT RESIDENCE".  A search of the vehicle was conducted and located in the vehicle were several pieces of tin foil cut into squares.  Two pieces of tin foil were found to have burn marks on them which, based upon your Affiant's experience and education, is consistent with the consumption of prescription pills.  When asked about the tin foil, Patricia stated that the burn marks on the tin foil were caused as a result of consuming prescription pills. Both Patricia and Cory were placed under arrest for various charges including possession of drug paraphernalia for the burnt tin foil located in the vehicle.  Patricia was approximately 24 weeks pregnant on the date of this arrest.

12.    On November 21, 2017, SA Fauver conducted another interview with Josh Lee ("Josh").  SA Fauver asked Josh if he has acquired prescription pills from Patricia.  Josh stated that approximately a month prior to this interview, he provided money to Robby Knight ("Knight") and Knight acquired pills from Patricia at the "SUBJECT RESIDENCE" for Josh.  Josh stated that Knight provided him with two 30mg Oxycodone pills which Knight had acquired from Patricia at the "SUBJECT RESIDENCE".

13.    On December 01, 2017, SA Fauver spoke with a confidential source of information, "CS-1," via phone.  CS-1 advised SA Fauver that an individual known by CS-1 by

7

the name of "Cookie" stated on the date of this phone call, she could acquire prescription pills for CS-1. CS-1 stated that "Cookie" advised CS-1 that if he/she provided her ("Cookie") with money, she could acquire pills from an individual who lives in Sanish town site. "Cookie" then stated to CS-1 that this individual she would be providing the money to and acquiring the pills from for CS-1 was Patricia.

14.     On December 01, 2017, SA Fauver drove to the "SUBJECT RESIDENCE" and observed a rental vehicle parked at "SUBJECT RESIDENCE."

15.     On January 05, 2018, PA Brummett and PA Two Crow with MHA-DDE conducted a traffic stop on a white sedan for a traffic infraction. This vehicle was observed leaving the "SUBJECT RESIDENCE". The operator of the vehicle was identified as Patricia and the front passenger was identified as Cory. A two (2) year old child was also seated in the back seat of the vehicle. PA Two Crow deployed his narcotic detection K9 for a narcotics sniff on the vehicle. PA Two Crow's K9 indicated to the odor of illegal narcotics coming from in or about the vehicle. A search of the vehicle revealed one (1) 30mg oxycodone pill and drug paraphernalia associated with the consumption of prescription pills. Patricia was placed under arrest for possession of a controlled substance and possession of drug paraphernalia and transported to the Gerald "Tex" Fox Justice Center. Patricia was not booked into the jail by corrections officers due to her being approximately nine (9) months pregnant at the time of arrest.

16.     On January 05, 2018, SA Fauver and PA Brummett conducted an interview with Patricia outside the Gerald "Tex" Fox Justice Center. Patricia was in custody on charges of possession of a controlled substance (oxycodone) and possession of drug paraphernalia (meth)

8

from the traffic stop referenced above.  Patricia stated she had last consumed a prescription pill on January 1, 2018.  Patricia stated that she acquired the pill she consumed from a black male by the name of "Reo", who is from the state of Michigan.  SA Fauver asked Patricia about the rental vehicle parked in the drive way of her residence (the "SUBJECT RESIDENCE"), and Patricia stated that she believes that vehicle belonged to "Reo".  Patricia then listed several different occasions where "Reo" had parked rental vehicles at "SUBJECT RESIDENCE" while he was in the New Town area for the purpose of distributing prescription pills.

17.     On January 09, 2018, SA Fauver reviewed cell phone content extracted from a phone utilized by Patricia.  Patricia provided MHA-DDE written consent to a search of her cell phone.  In the data collected from the cell phone, SA Fauver located a large amount of text messages that indicated Patricia was actively involved in the distribution of illegal narcotics, namely prescription pills. In this cell phone data SA Fauver observed messages where Patricia is instructing individuals to travel to the "SUBJECT RESIDENCE" for the purpose of acquiring prescription pills.  SA Fauver also observed a contact saved in Patricia's phone as "Jose" that was associated with phone number 734-895-5236.  SA Fauver noted there were over 100 interactions between "Jose" and Patricia from November 11, 2017, to January 5, 2018 (the date of her arrest).  There was a second contact stored under "Jose" in the phone as well, associated with phone number 248-469-9723.  However, there were no interactions with this number.

18.     On January 09, 2018, SA Fauver and SA White with MHA-DDE conducted an interview with a second confidential source of information, CS-2.  CS-2 stated to agents that on multiple occasions, CS-2's significant other has acquired prescription pills from Patricia at "SUBJECT RESIDENCE".  CS-2 stated that Patricia would also provide pill(s) to his/her

significant other in exchange for allowing Patricia to use his/her significant other's vehicle. According to CS-2, this activity was ongoing to the date of the interview, although CS-2 did not indicate the last date his/her significant other had acquired pills from Patricia.

19.     On January 12, 2018, SA Fauver and SA White, both with MHA-DDE, conducted an interview with a third confidential source of information, CS-3, at the Gerald "Tex" Fox Justice Center.  CS-3 stated that Patricia is a distributor of prescription pills.  CS-3 stated that black males from Michigan by the names of "Reo" and "Jose" have stayed at Patricia's residence "SUBJECT RESIDENCE" for the purpose of distributing pills.  CS-3 has acquired pills from both "Reo" and "Jose" on multiple occasions while they were staying at "SUBJECT RESIDENCE" and the most recent occasion was in November of 2017.  CS-3 stated that "Reo" and "Jose" travel in rental vehicles to North Dakota and that if there is a rental vehicle parked at Patricia's residence "SUBJECT RESIDENCE", there is a source of supply for pills located in "SUBJECT RESIDENCE".  CS-3 positively identified a photograph of Jorge Pitts as the individual he knew as "Jose" who had been staying at Patricia's residence.

20.     On January 25, 2018, K9 Patrol Officer Darren Carter with the New Town Police Department conducted a traffic stop on a white Nissan Altima bearing Maryland license plate number 2CS7606 for a traffic violation on Highway 23 near New Town, ND.  The vehicle was registered as a rental and the operator of the vehicle was identified as Jorge Mikel Pitts ("Pitts").  During his contact with Pitts, Officer Carter observed that Pitts appeared to be nervous, Pitts indicated he did not know his travel plans, the vehicle was past due on return to Enterprise Rental Company and there were several items in the vehicle including but not limited to a duffle bag and a large amount of food items.  Based on these observations, Officer Carter deployed his

narcotic detection K9 for a sniff of the vehicle. Officer Carter's K9 gave a positive indication to

the odor of illegal narcotics coming from in or about the vehicle. Officer Carter, SA Fauver and

Officer Bronson Young Wolf with MHA Highway Patrol then conducted a roadside search of the

vehicle. A small bag containing a green leafy substance determined to be marijuana was located

underneath the operator's seat. Also located near the small bag of marijuana, a Black and Mild

cigarette was located. Also located in the vehicle was a large duffle bag containing various

articles of clothing, toiletries, a laundry bag, and various other items in the back seat of the

vehicle. Law enforcement on scene also observed that there were several areas of the vehicle

that appeared to have been tampered with. The front bumper of the vehicle appeared to have

been removed at one time due to it not being fully secured to the vehicle. Underneath the front

hood of the vehicle there were screws/tabs that were missing and others appeared to have been

tampered with. Inside of the vehicle there were also several compartments and areas where

illegal contraband could be concealed. Due to the location of the search being on the side of a

busy highway, law enforcement was unable to conduct a thorough search of the vehicle. All the

items listed above were locked and secured in the vehicle. The vehicle was towed to the A&W

Impound Lot and locked and secured inside a building. Pitts was placed under arrest for

possession of marijuana and marijuana paraphernalia and transported to the Mountrail County

Correctional Center. The SUBJECT CELLULAR TELEPHONES, namely, a black iPhone 7

which was located inside of the vehicle and a black LG flip phone located on Pitts' person, were

removed and secured by Officer Carter and later stored in an evidence locker at the New Town

Police Department.

     21.    On January 25, 2018, your Affiant contacted Enterprise Rental Company and

confirmed that Pitts has rented motor vehicles from their company on several occasions from in

11

or about June 2017 and continuing to January 2018, to include the white Nissan Altima referred to above. According to Enterprise, Pitts has provided them with several telephone numbers as his contact numbers when renting vehicles, including phone number 248-469-9723. This is the same telephone number saved in Patricia's cellular telephone under the one of the contacts for "Jose."

22.    It is my belief that the SUBJECT RESIDENCE, SUBJECT VEHICLE, and SUBJECT CELLUALR PHONES were all in fact used in furtherance of drug trafficking activities in violation of 21 USC 841 and 846. As a result of my training and experience, I believe that a search of these devices and locations will reveal that the devices and locations contain evidence of these crimes.

23.    Based upon my training, education, and experience in conducting narcotics investigations, I am aware that persons who traffic in controlled substances generally keep records, notes, receipts, ledgers, logs of buyers and sellers, transaction amounts, and other similar documentation of their drug trafficking activity. They also utilize cellular phones to engage in drug trafficking, including through text messaging and calls, and maintaining contact lists for buyers and sellers of controlled substances. Drug traffickers also frequently possess various drug paraphernalia to assist in their drug trafficking activities, such as scales to weigh out quantities of controlled substances or smoking devices and hypodermic needles and syringes to ingest controlled substances.

24.    As part of this request, I am requesting authorization to seize any cellular phones, including any and all media storage devices, currently inside the residence of Patricia Lincoln as described above as the SUBJECT PREMISES, and the SUBJECT CELLULAR TELEPHONES,

and to search these cellular phones and media storage devices for all records, data, and images, in whatever form and by whatever means they have been created or stored on such cellular telephones and storage devices for information relating to violations of 21 USC § 841(a) (drug trafficking), 21 USC § 846 (conspiracy to traffic drugs), and 18 USC 1956(h) (money laundering conspiracy) involving Patricia Lincoln, Jorge Pitts, and any unknown, or yet to be identified subjects, including but not limited to, lists of drug customers and related identifying information; types, amounts and prices of drugs purchased, used or trafficked, or offered for purchase or sale, as well as dates, places, and amounts of specific transactions; any information related to sources of narcotic drugs (including names, addresses, phone numbers, images, or any other identifying information); photographic or video images of drugs, drug paraphernalia, money or monetary instruments, drug use or drug transactions; any information recording the travels of Patricia Lincoln, Jorge Pitts, and any unknown, or yet to be identified subjects; and any financial account and transaction information.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

25.     Among the property requested to be searched are two Cellular Telephones, described as one Black iPhone Cellular Telephone and any attached SIM cards and memory cards, hereinafter described as "Device #1", and one Black LG flip phone cellular telephone and any attached SIM cards and memory cards, hereinafter described as "Device #2"; both of which were seized from Jorge Pitts, in New Town, North Dakota on January 25, 2018.  These devices are currently located in evidence at the New Town Police Department located at 103 Soo Place, New Town, North Dakota.  Additional cellular telephones may be located at the residence of Patricia Lincoln.

13

26.     The applied-for warrant would authorize the forensic examination of the devices for the purpose of identifying electronically stored data particularly described in Exhibit B to that warrant.

## BACKGROUND ON ELECTRONIC DEVICES

27.     A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving videos; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  The size of the electronic storage media used in wireless telephones has grown tremendously within the last several years.  These wireless telephones can store thousands of images at very high resolution.

## TECHNICAL TERMS

25.     Based on my training and experience, I use the following technical terms to convey the following meanings:

14

a.  Wireless telephone:   A wireless telephone (or mobile telephone, or cellular
telephone) is a handheld wireless Device used for voice and data communication
through radio signals.   These telephones send signals through networks of
transmitter/receivers, enabling communication with other wireless telephones or
traditional "land line" telephones.  A wireless telephone usually contains a "call
log," which records the telephone number, date, and time of calls made to and
from the phone.   In addition to enabling voice communications, wireless
telephones offer a broad range of capabilities.  These capabilities include: storing
names and phone numbers in electronic "address books;" sending, receiving, and
storing text messages and e-mail; taking, sending, receiving, and storing still
photographs and moving video; storing and playing back audio files; storing
dates, appointments, and other information on personal calendars; and accessing
and downloading information from the Internet.   Wireless telephones may also
include global positioning system ("GPS") technology for determining the
location of the Device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital
picture files, rather than by using photographic film.   Digital cameras use a
variety of fixed and removable storage media to store their recorded images.
Images can usually be retrieved by connecting the camera to a computer or by
connecting the removable storage medium to a separate reader.   Removable
storage media include various types of flash memory cards or miniature hard
drives.  Most digital cameras also include a screen for viewing the stored images.

15

This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage Device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation Device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation Device can give a user driving or walking directions to another location.  This Device can contain records of the addresses or locations involved in such navigation.   The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected

16

to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic Device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication Device and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the Device.

26.     Based on my training, experience, and research, I know that cellular telephones have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player and GPS navigation device. In my training and experience, examining data stored on a device of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

17

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

27.     Based on my knowledge, training, and experience, I know that an electronic Device can store information for long periods of time. This information can sometimes be recovered with forensics tools.

28.     *Forensic evidence.*  As further described in Attachment B to the search warrant for the cellular telephones, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.   Forensic evidence on a device can also indicate who has used or controlled the Device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.   A person with appropriate familiarity with how an electronic Device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic Device were used, the purpose of their use, who used them, and when.

18

d. The process of identifying the exact electronically stored information on storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a Device is evidence may depend on other information stored on the Device and the application of knowledge about how a Device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a Device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

29.   *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

30.   Based on the above information, there is probable cause to believe that the Specified Federal Offenses have been violated. Accordingly, your Affiant respectfully requests that this Court issue search warrants for the "SUBJECT RESIDENCE"; the SUBJECT

VEHICLE; and, the SUBJECT CELLULAR TELEPHONES for the items described in the corresponding Exhibit B for each warrant.

Respectfully submitted,

Derek Davis
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me telephonically, on January 25, 2018.

CHARLES S. MILLER, JR.,
UNITED STATES MAGISTRATE JUDGE

20